This is a suit to recover for personal injuries sustained by the plaintiff as a result of being struck by an ice truck of the defendant Ice Service, Inc. The petition alleges that on or about August 17, 1946, at about 3:30 P.M., the petitioner was struck by an Ice truck driven by an employee of Ice Service, Inc., while petitioner was standing beside a parked automobile in an alley known as North 20th Street, in the City of Baton Rouge. it is shown that the truck was being driven by the employee of the defendant Ice Company in the course of his employment, and it is alleged that the plaintiff was damaged in the total amount of $17,270.96 representing loss of income at the rate of $9.00 per week for plaintiff's expectancy according to American Experience Mortality Tables, for 26.22 years $36 for medical treatment; $41.75 for drugs and back brace; and $48.76 for ambulance service; $4,000 for physical injuries; $1,000 for pain, suffering and shock. The suit is against both the Ice Company and its insurer, United States Fidelity 
Guaranty Company, and is based on the allegation that plaintiff was struck and injured solely by the gross fault, willful and wanton carelessness and negligence of the defendant's employee.
The defendants, in their answer, admit that the accident occurred at the time and *Page 889 
place alleged, but deny any negligence on the part of defendant's truck driver, contending that the accident and injuries were caused solely by the gross negligence of the plaintiff in placing herself in the path of the ice truck. The answer also denies that plaintiff's present injuries are the result of the accident. In the alternative, the defendants plead contributory negligence on the part of the plaintiff, barring her recovery.
After trial of the case the trial judge rendered judgment in favor of plaintiff in the amount of $3,141.47, with legal interest from December 2, 1946, the date the suit was filed, and all costs. Defendants have appealed, and the plaintiff has answered the appeal, praying that the award be increased to the amount originally prayed for.
A review of the evidence reveals that at the time and place alleged, the plaintiff, a large colored woman, was standing by the left side of the automobile of a Mr. Levert, looking at some cloth material in the automobile which Mr. Levert was trying to sell her. The Levert automobile was parked on the right-hand side of North 20th Street, according to the preponderance of the evidence, and Mr. Levert was standing on the right hand side with the right door of his car, a 2-door sedan, open, and plaintiff had her foot on the fender on the left-hand side, with that door also open. North 20th Street, formerly known as Gass' Alley, is a narrow street or alley running from North Street to Main Street, north to south, a distance of 2 or 3 blocks. The ice truck entered this street or alley from North Street and in attempting to pass the parked car and the plaintiff by the side thereof, pulled to its left, but failed to have sufficient clearence, consequently the right front of the body of the ice truck struck the plaintiff on her left side, near her hip, and pushed her over to the left front fender and hood of the car.
There is some contradiction in the testimony over several points, including the question as to whether the truck driver, upon entering North 20th Street, blew his horn, as to the speed at which he was driving, as to whether he stopped prior to proceeding by the parked automobile, and as to whether the parked automobile was on the right-hand side with sufficient space left for clearance of vehicles on the left-hand side, or was parked in the middle of the street, and as to whether the plaintiff, after having been struck, was able to walk away from the scene without assistance.
The plaintiff testifies that when she saw the truck coming into North 20th Street, she closed the door of the car with her left hand and started waving to the truck driver to stop, as she proceeded to the rear of the parked car in order to place herself in a position of safety, but that the truck kept coming on at a faster rate, without stopping, and attempted to pass on the left side, but failed to clear her and struck her and that is all she can recall about the accident until some short time thereafter when she found herself in bed at her house located a few feet from the scene of the accident. Her version of the accident is corroborated by Frank McGee, a painter, who had been painting the roof of her house and who states he was on the north-west corner of the roof, at a point where he could observe all that happened. This witness states that there was sufficient room for the truck to have gone by, but that to do so the truck had to pass on a slight embankment on the left side, an elevation of about 6 inches, and that, in effect, the truck did go on this slight elevation, but not sufficiently to the left thereof, and that because of this elevation the truck body was tilted and the front thereof struck plaintiff. Like the plaintiff, he testifies that he made no stop until after he had struck plaintiff, and someone had hollored to stop and that he merely stopped a very short time and proceeded on.
Francis Williams, a colored man, who was sitting on plaintiff's porch, testified to the same effect.
Mr. Levert, white salesman, testified practically to the same effect, except that he did state that the truck was driving at a very slow rate of speed, and that as he approached the parked automobile he shifted gears and attempted to clear the automobile and plaintiff, but did not allow himself enough room to do so. *Page 890 
The truck driver testified that upon entering the intersection of North 20th Street, he shifted to second gear because of an elevation at the intersection, and that he proceeded at a very slow speed and with utmost caution, and that as he arrived near the parked automobile of Mr. Levert, which he states was parked in the middle of the street, with both doors open, and with plaintiff standing at the left side with the door against her back, he came to a complete stop and that he then proceeded in first gear to go by, but that because of the elevation at the left side, the body of the truck tilted and that it struck plaintiff. In the answer it was alleged that plaintiff had closed the door and had stood with her back close to the parked automobile signalling the truck driver to proceed, but in his testimony the truck driver denies that such maneuver was made by the plaintiff and signal given by her, and, in effect, that he thought he had sufficient clearance, and therefore proceeded.
The other occupant of the truck, Robert Starks, colored boy of the age of 17, testified that he was in the rear of the ice truck at the time of the collision and that he saw everything that happened that plaintiff was standing inside of the left door as the truck approached, but that she closed the door and because of her changing position insufficient clearance was left, and consequently she was struck by the body of the truck when it tilted upon going on the elevation on the left side. From his testimony of his position in the ice truck it is difficult to believe that he could see what happened.
This witness, as well as the truck driver, testified that upon being struck plaintiff walked away from the scene to her house without any assistance, but all the other witnesses, including Mr. Levert, testified that she had to be assisted into her house and to be placed in her bed.
[1] it seems clear from the evidence of the actual happening of the accident that if plaintiff was guilty of any negligence whatsoever, her negligence was passive, and that she did everything she could to extricate herself from the dangerous position in which she found herself, but to no avail, because of the failure of the truck driver to give her a chance to do so. The truck driver, on his own testimony, described the peril in which the plaintiff found herself right after he had entered 20th Street, and from the preponderance of the testimony, he most certainly could have prevented the accident, either by stopping until plaintiff had removed herself from the scene, or by driving his truck further to the left. There is no testimony as to the width of the street, but the preponderance of the evidence is that there was sufficient clearance for the truck to have passed the parked automobile and plaintiff. If he had gone further to his left the accident would not have happened. It seems clear that the accident was a result of the exercise of poor judgment on the part of the defendants truck driver, and that his action constitutes gross negligence and the sole proximate cause of the accident, and that therefore the defendants are liable for the damage resulting to the plaintiff herein.
[2] As to the quantum of damages, the evidence is not clear-cut. It is shown that after the accident the plaintiff made three visits to the Charity Hospital in New Orleans, and that from the diagnoses of doctors who examined her there, she sustained a contusion on her left lower back and that she had a possible sacroiliac strain. It is also shown that she has been some six weeks in bed right after the accident, and that according to the lay testimony she had remained disabled from doing any work since the accident. At the time of the accident, she was 42 years of age, and had been employed by Mrs. Belle Roddam, as a servant and nurse maid, with varied duties such as cooking, washing, cleaning house and taking care of children. Mrs. Roddam testified that she worked for her for some ten years, at an average wage of $8 to $10 per week. Mrs. Roddam and some other white ladies testified that since the accident they have visited the plaintiff and have administered to her in various respects, such as assisting her into and out of bed, rubbing her back with alcohol and applying infrared light treatment on her body; these witnesses have also testified that plaintiff *Page 891 
has complained of pain ever since the accident and she is subject to hysteria and trembling of her hands. The trial judge comments that in the Court room she apparently had a continuous tremor of her right hand. Dr. Kern and Dr. McHugh testified that her condition of hysteria and present disability is not due to the effects of the accident, but due to childbirth resulting from having had 12 children. These doctors feel that in so far as the accident is concerned, this colored woman should have recovered completely in a period of about 8 weeks, for the reason that there were no objective symptoms of any permanent injury. She complains of pain in the intracostal nerve in the region of the 11th and 12th ribs, but these medical experts discount her subjective symptoms on the theory that if the nerves were affected there would be objective symptoms shown by X-ray of injury to a rib or ribs and that the X-rays reveal no such objective symptoms. In effect, these doctors appear to be of the opinion that such pain as plaintiff states she has are either simulated or a result of her condition due to childbirth and that this is also true with reference to her condition of hysteria. In any event, there is no question that plaintiff sustained a rather severe blow from this heavy ice truck and that as a result she received a contusion and bruises which caused her much pain and suffering and was the direct result of her disability, at least for the period of time she was confined to her bed, or some six weeks, and probably the experience and resulting shock aggravated a pre-existing condition caused by childbirth. The trial judge did not favor us with written reasons for his judgment, but he apparently felt that from the testimony and from his observation of the plaintiff in the Court room, that she had sustained sufficient injury to entitle her to an award of $2,000 for that item. The remainder of his judgment apparently is for expenses for medical treatment, which is proved.
In so far as the item of loss of income of $9 per week is concerned it does not appear to be sufficiently proved that plaintiff is permanently disabled from earning this small income as a servant, and moreover she admits that she is now receiving an allowance from the Welfare Department of some $54 per month.
We feel that the amount awarded by the lower court is reasonable and we see no reason for disturbing his award, especially considering the fact that with the plaintiff there before him, he was in a better position to determine the amount of her disability and pain sustained in the accident.
For these reasons, the judgment appealed from is affirmed.